[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiffs from an assessment of damages by the defendant for a taking by eminent domain of a portion of the plaintiffs' property, together with an easement and certain rights, in connection with the reconstruction of the state highway known as Route 220. The property taken lies along the southerly side of Route 220 in Enfield where Route 220 is also known as Shaker Road. The property and the rights taken are described in the plaintiffs' complaint, in which reference is made to a map dated June 1987 and the parcel taken is described CT Page 2446 as containing 0.887 acre. The complaint contains a second count alleging that the map did not identify correctly the southerly boundary of the property taken. A revised map dated March 1990 was prepared showing that the parcel taken contained 0.937 acre. The second count was withdrawn and an amended certificate of condemnation was filed. The parties stipulated that the first count should be treated as if it alleged that the parcel taken contained 0.937 acre.
The premises taken consist of 0.937 acre, more or less from a parcel containing 10.57 acres, more or less, The property is in an industrial zone but is presently used by the plaintiffs as their residence. Situated on the property are a single-family dwelling and three outbuildings. The property taken runs along the entire northerly boundary of the plaintiffs' land, a distance of 1222.38 feet along the southerly line of of Route 220. It is shown on the revised map dated March 1990 and introduced into evidence as Exhibit B. The taking date was July 31, 1989 and the damages assessed by the defendant were $27,000 which sum was deposited with the clerk of the Superior Court and withdrawn by the plaintiffs on November 20, 1989.
The subject property is in the north central section of Enfield on the southerly side of Shaker Road, and the easterly property line intersects with Shaker Road at a point approximately 750 feet westerly of North Maple Street. A very small portion of the extreme rear of the property may be in a designated flood zone. The strip which has been taken varies from thirty-five to forty feet in depth. Although it extends along the entire frontage on Shaker Road, the northeast and northwest angles of the property lines as they intersect with Shaker Road are such that the frontage on the widened roadway will be 1,228 feet. Also taken was the right to grade and construct driveways over 0.055 acre, more or less, and an easement to slope for the safety of the highway and to remove, use or retain excavated material over 0.002 acre, more or less.
There has been significant commercial development in Enfield in recent years, although there has not been such of it in the vicinity of the subject property. To the north of the subject property, on the northerly side of Shaker Road, the and has been used for single-family and condominium residential usage. The land to the east is used for agricultural purposes and the land to the south is essentially open space. The land to the west is zoned for industrial purposes but there are two dwellings in the area. All utilities are available to the property. The property is heavily wooded with many mature trees in the area of the take. The land is gently rolling and slopes gradually downward in a southerly direction toward the rear of the property. The only improvement in the taking area is CT Page 2447 approximately forty feet of the driveway. The remaining portion of the driveway intersecting with the widened Shaker Road will be reconstructed and regraded by the State of Connecticut, The property is about 3 miles from Route 5 and about 2-1/2 miles from ramps to and from I-91.
David N. Collins, a qualified real estate appraiser, testified for the plaintiffs. He testified that residential use in an Industrial-1 zone is by special permit only, but that the present dwelling on the subject property is a legally non conforming use. It was his opinion that the residential use will continue until such time as the value of the land exceeds the value of the existing structures, but that the highest and best use of the land to the west of the buildings is for future industrial usage. Collins considered the three generally accepted approaches to value and chose the direct sales comparison approach as being I most appropriate. He found four sales which he considered comparable, as of which were in Enfield. Each of the chosen comparable sites was in an industrial zone. Three of the sites were of about six acres in area and one was of .56 acre. Collins opined that before the take, the subject property had a fair market value of $639,000 including the value of the wells and the sewer connections but not including the value of the buildings. He concluded that the fair market value after the take was $573,500 and calculated damages of $65,500.
Raymond C. Boucher, also a qualified real estate appraiser and employed as a staff appraiser for the Department of Transportation testified for the defendant. He considered that the highest and best use of the property was for industrial development. He developed his opinion of value using the direct sales comparison approach. He did not believe that the improvements on the property were affected by the taking. Boucher used three sales in Enfield which he found to be comparable. He included in his report a fourth sale for informational purposes. Each of the comparable sales was of about six acres in area. Boucher testified that in his opinion, the fair market value of the land before the taking was $369,950 plus $5,000 for the trees in the strip taken for a total of $374,950. In his opinion, the fair market value of the land after the take was $337,150. He did not allow any compensation for the right to grade and construct driveways because the right is temporary and the rights will restore the property to its original condition. He did compensate for the slope easements, however, by reducing the value of the 0.002 acre involved by ten percent. He calculated damages of $37,800. Boucher had prepared an earlier report as of March 20, 1989, which was based upon the mistaken notion that the taking was 0.887 acre rather than 0.937 acre. In that earlier report, he calculated damages of $27,000, which is the amount deposited by the defendant and withdrawn by the plaintiffs. CT Page 2448
I find that the highest and best use of the subject property is for industrial purposes. After having seen the subject property and the sites of the comparable sales, and having considered all of the evidence presented, including the opinions of the expert witnesses, and my own knowledge of the elements which establish value, I find that the before taking value of the plaintiffs' land was $377,450 and that the after taking value was $337,150. I therefore assess damages of $40,300.
Judgment may enter for the plaintiffs in the amount of $40,300, less $27,000 previously paid, with interest on the excess amount of $13,300 from the date of taking to the date of payment, together with costs and an allowance of $750 towards the appraisal fees.
GEORGE D. STOUGHTON, State Trial Referee